UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br><br> Defendant. | Case No. 23-cv-01855-SVK <br><br> **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br> Re: Dkt. Nos. 9, 13 |

Plaintiff J.B. appeals from the final decision of Defendant Commissioner of Social Security, which denied his application for supplemental security income. The Parties have consented to the jurisdiction of a magistrate judge. *See* Dkts. 6-7. For the reasons discussed below, the Court **DENIES** Plaintiff's motion for summary judgment (the "Motion" at Dkt. 9) and **GRANTS** Defendant's cross-motion for summary judgment (the "Cross-Motion" or "Opposition" at Dkt. 13).

I.  **BACKGROUND**

On December 23, 2019, Plaintiff applied for Title XVI supplemental security income, alleging a disability onset date of January 1, 2018. *See* AR 224.[1] Defendant denied Plaintiff's claim on October 15, 2020 and request for reconsideration of that denial on March 11, 2021. *See id.* at 103, 125-26. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") to reassess his claim. *See id.* at 149-50. In a brief he submitted before the hearing, Plaintiff amended his alleged disability onset date to December 18, 2019. *See id.* at 315. Plaintiff then appeared for a telephonic hearing before an ALJ on December 9, 2021. *See id.* at 39-80.

The ALJ denied Plaintiff's claim on December 29, 2021. *See id.* at 18-38 (the "ALJ

---

[1] The Administrative Record is available at Dkts. 8 through 8-8.

Decision"). She found that Plaintiff had the following severe impairments: "mental impairments, variously diagnosed as paranoid schizophrenia, major depressive disorder, anxiety disorder, neurocognitive disorder, post-traumatic stress disorder (PTSD), and history of substance abuse in recovery." *Id.* at AR 24. She also found that these impairments (both individually and in combination) do not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. Section 404, Subpart P, Appendix 1. *See id.* at AR 24-25. She then found that Plaintiff maintains a residual functional capacity ("RFC") to "to perform a full range of work at all exertional levels," but with certain non-exertional limitations. *See id.* at AR 25-31. Finally, she found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *See id.* at AR 32-33. In light of these finding, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since December 18, 2019." *See id.* at AR 33.

Plaintiff subsequently requested that the Appeals Council review the ALJ's decision, and the Appeals Council denied Plaintiff's request. *See* AR 1-3. Plaintiff then timely filed an appeal to this Court seeking review of the ALJ Decision. *See* Dkt. 1. Now before the Court are Plaintiff's Motion and Defendant's Cross-Motion, which were filed pursuant to Civil Local Rule 16-5 and are ready for decision without oral argument.

**II.    ISSUES FOR REVIEW**

In this Order, the Court reviews the following issues:

1. Did the ALJ properly evaluate the medical evidence?
2. Did the ALJ err in discrediting Plaintiff's subjective statements regarding his symptoms?
3. Did the ALJ err in determining Plaintiff's RFC?

///
///
///
///
///

2

### III. STANDARD OF REVIEW

The Court is authorized to review Defendant's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (citation omitted). The Court's limited role allows it to disturb an ALJ's decision only if that decision is (1) not supported by substantial evidence or (2) based on the application of improper legal standards. *Id.*

**Not Supported By Substantial Evidence.** "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted); *see also Rounds v. Comm'r SSA*, 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' and 'must be "more than a mere scintilla," but may be less than a preponderance.'" (citation omitted)). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from [Defendant's] conclusion." *Rounds*, 807 F.3d at 1002 (citation omitted). But where "the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Id.* (citation omitted).

**Application Of Improper Legal Standards.** Even if an ALJ commits legal error, the Court will uphold the ALJ's decision if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (citations omitted).

///

///

///

**IV. DISCUSSION**

As explained below, the Court holds that the ALJ acted properly with respect to Issues One, Two and Three.

**A.      Analysis Of Issue One: The ALJ Properly Evaluated The Medical Evidence**

Federal regulations require an ALJ to evaluate medical evidence along five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization and (5) "other factors." *See* 20 C.F.R. § 416.920c(c). The two "most important factors" are supportability and consistency, and the regulations require an ALJ to expressly discuss these factors in their decision; they do not obligate an ALJ to expressly discuss the remaining factors. *See id.* § 416.920c(b)(2); *see also Gentry S. v. Kijakazi*, No. 20-cv-05814-SVK, 2022 WL 1601413, at *3 (N.D. Cal. Mar. 31, 2022). Supportability concerns the relevance of "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)." 20 C.F.R. § 416.920c(c)(1). Consistency, in turn, concerns the consistency between a medical opinion and "the evidence from other medical sources and nonmedical sources." *Id.* § 416.920c(c)(2).

Plaintiff argues the ALJ "fail[ed] to provide specific and legitimate reasons for the relative persuasiveness she assigned to the [various medical] opinions" in the record. Motion at 4. The Court disagrees.

     **1.      The ALJ Properly Concluded That The Findings Of Doctors Dalton And Robicheau Were Persuasive**

Doctors Dalton and Robicheau both opined that Plaintiff's psychological condition renders him capable of performing simple work involving limited social contact, and Doctor Robicheau further opined that Plaintiff could also perform more-detailed tasks. *See* AR 98-102 (Dalton), 117-23 (Robicheau). In finding these opinions persuasive, the ALJ discussed in detail the doctors' findings and expressly noted the supportability and consistency of those findings. *See* ALJ Decision at AR 30-31. Indeed, both doctors' reports identify the evidence considered (*see* AR 89-91 (Dalton), 107-11 (Robicheau)), and both doctors reached similar conclusions. Finding these opinions to be persuasive is therefore supported by substantial evidence.

Plaintiff offers three reasons why the Court should reject the ALJ's finding of

4

persuasiveness.

*First*, Plaintiff argues that "there are no qualifications for either doctor in the record." Motion at 6. That contention is false. The record identifies each doctor as a "Psy. D." *See* AR 102 (Dalton), 118 (Robicheau).

*Second*, Plaintiff argues that neither doctor examined Plaintiff, as both instead merely reviewed Plaintiff's medical record. *See* Motion at 6. But the relevant regulations expressly contemplate that a medical source may opine on a claimant's condition based on only a review of medical records. *See* 20 C.F.R. § 416.920c(c)(3)(v) ("A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder."). While these regulations indicate that an examining physician "may have a better understanding" than one who "only reviews evidence in [a claimant's] folder," they do not require an ALJ to discount wholesale the opinion of a physician who does not examine a claimant. *See also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("We therefore decline Andrews's invitation to hold that a nonexamining medical advisor's statements inevitably deserve 'little' or no weight.").

*Third*, Plaintiff faults the ALJ for "fail[ing] to connect any specific statements in the[] opinions [of Doctors Dalton and Robicheau] to any specific evidence of record." Motion at 6. Plaintiff cites no authority imposing such a requirement on an ALJ. In any event, the ALJ explained that the findings of Doctors Dalton and Robicheau "are supported with a detailed explanation and citations to the objective medical evidence." *See* ALJ Decision at AR 31. Having reviewed the reports of Doctors Dalton and Robicheau, the Court agrees. *See* AR 98-100 (Dalton), 117-19 (Robicheau).

///
///
///
///
///
///

          2.       The ALJ Properly Concluded That The Findings Of
<u>Doctors Dixit And Thomas Were Somewhat Persuasive</u>

Doctor Dixit opined that Plaintiff could perform simple, detailed and complex work with "mild difficulty" in engaging with others, and Doctor Thomas opined that Plaintiff's psychological condition posed no or mild limitations in his ability to work. *See id.* 463 (Dixit), 545-46 (Thomas). In finding these opinions to be somewhat persuasive, the ALJ discussed in detail the doctors' findings and expressly noted the supportability and consistency of those findings. *See* ALJ Decision at AR 28-30. Specifically, the ALJ found Doctor Dixit's opinion to be only "partially persuasive," because evidence in the record "is more consistent with moderate limitations in [Plaintiff's] social functioning," and because Plaintiff "reasonably has moderate limitations in adaptation based on his history of trauma, psychosis, and substance abuse." *See id.* at AR 28-29. Similarly, the ALJ found Doctor Thomas's opinion to be "not entirely persuasive," because Plaintiff's "longitudinal mental health treatment records do support some mental limitations." *Id.* at AR 30.[2] Finding the opinions of Doctors Dixit and Thomas to be somewhat persuasive is therefore supported by substantial evidence.

**With respect to Doctor Dixit**, Plaintiff offers three reasons why the Court should reject the ALJ's finding of persuasiveness.

*First*, Plaintiff argues that Doctor Dixit "was informed by only a mental status examination and no other objective psychological testing" and that her "review of records was limited to a disability form and a singular visit from 2016." Motion at 5. But a limited examination and review of records does not compel rejecting a medical source's opinion; rather, the relevant regulations indicate that an ALJ should adjust its persuasiveness finding for such a medical opinion. *See* 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior

---

[2] In the middle of her discussion of Doctor Thomas's findings, the ALJ begins referring to Doctor Catlin instead of Doctor Thomas. *See* ALJ Decision at AR 30. As Defendant persuasively explains, this reference to Doctor Catlin constitutes a typographical error—the ALJ clearly meant to continue referring to Doctor Thomas. *See* Opposition at 9 n.5. This error is harmless. *See, e.g.*, *Lemke v. Comm'r SSA*, 380 F. App'x 599, 601 (9th Cir. 2010) (typographical error harmless where "it is clear that the ALJ intended to reference" a different regulation than the one cited).

administrative medical finding(s) will be."). The ALJ did just that, as she found Doctor Dixit's opinion to be "only partially persuasive." *See* ALJ Decision at AR 28.

***Second***, Plaintiff argues that Doctor Dixit's "opinion lacks consistency with, and is drastically different from, the other two examining opinions in the record." Motion at 5 (citing opinions of Doctors Wiebe and Catlin). As discussed below, however, the ALJ properly found the opinions of Doctors Wiebe and Catlin not to be persuasive. *See* Section IV.A.3, *infra*. Further, Doctor Dixit's opinion is somewhat consistent with the opinions of Doctors Dalton, Robicheau and Thomas, all of which the ALJ found to be at least somewhat persuasive.

***Third***, Plaintiff argues that Doctor Dixit's "opinion is also internally inconsistent, as she notes severe symptoms and limitations including [Plaintiff's] inability to leave the home due to anxiety, but then concludes [that Plaintiff] is virtually unimpaired." Motion at 5. The Court has reviewed Doctor Dixit's report and disagrees that she found "severe symptoms and limitations." The limitations referenced by Plaintiff (*e.g.*, his inability to leave his home due to his anxiety) are not limitations found by Doctor Dixit; rather, Doctor Dixit simply recorded in her report certain statements made to her by Plaintiff regarding his limitations. *See* AR 461. In any event, the ALJ did not accept Doctor Dixit's opinion wholesale and instead found that Plaintiff has "moderate limitations in social functioning [and] adaptation." *See* ALJ Decision at AR 28-29.

**With respect to Doctor Thomas**, Plaintiff offers two reasons why the Court should reject the ALJ's finding of persuasiveness.

***First***, Plaintiff argues that Doctor Thomas's opinion lacks supportability, because she "diagnoses [Plaintiff] with paranoid schizophrenia, . . . notes [Plaintiff's] auditory hallucinations, . . . merely cites [Plaintiff's] subjective self-reports . . . and concludes he is unimpaired." Motion at 5. But Doctor Thomas met with Plaintiff routinely for over a year. *See* AR 465-511, 524-42. Necessarily, her views are not based solely on Plaintiff's "subjective self-reports" but are also based on her observations during those visits. Further, in her questionnaire response, she expressly identifies "Progress & Office Notes" as the source of her opinion. *See id.* at 543. And although she does identify in her questionnaire response conditions such as paranoid schizophrenia and hearing voices, she explains that Plaintiff "has responded well to treatment and

7

has been psychiatrically stable." *See id*. Thus, the Court cannot conclude that her opinion lacks supportability.

**Second**, Plaintiff argues that Doctor Thomas's opinion is "inconsistent with the objective psychological testing results from Drs. Wiebe and Catlin's examinations." Motion at 5. As discussed below, however, the ALJ properly found the opinions of Doctors Wiebe and Catlin not to be persuasive. *See* Section IV.A.3, *infra*. Further, Doctor Thomas's opinion is somewhat consistent with the opinions of Doctors Dalton, Robicheau and Dixit, all of which the ALJ found to be at least somewhat persuasive.

### 3. The ALJ Properly Concluded That The Findings Of Doctors Wiebe And Catlin Were Not Persuasive

Doctor Wiebe and Catlin both opined that Plaintiff would have difficulty performing in a work setting and interacting with others. *See* AR 456 (Wiebe), 519-20 (Catlin). In finding these opinions unpersuasive, the ALJ discussed in detail the doctors' findings and expressly noted the lack of support for some of their findings and the inconsistencies between their findings and other medical evidence in the record. *See* ALJ Decision at AR 28-30. Finding these opinions to be unpersuasive is therefore supported by substantial evidence.

**With respect to Doctor Wiebe**, Plaintiff offers three reasons why the Court should reject the ALJ's finding of no persuasiveness.

**First**, Plaintiff argues that the ALJ provided "exceedingly brief, conclusory reasoning" in analyzing Doctor Wiebe's opinion. *See* Motion at 4. The Court disagrees. The ALJ discussed Doctor Wiebe's findings in detail and provided specific examples illustrating why she believed Doctor Wiebe's findings did not support her conclusions:

> The undersigned does not find that this opinion is persuasive, as not all of Dr. Wiebe's conclusions are supported by her examination findings. For example, Dr. Wiebe noted that results of the MCMI-IV showed an unusually high score on the inconsistency (W) scale, suggesting possible limitation to validity. She then made some assumptions that the high score was likely from problems with awareness of his problems, attention and fatigue but this was not documented or reported in the two-hour exam. Furthermore, her exam findings are in stark contrast to the results of the in person psychological evaluation performed by Dr. Dixit the next day (Exhibit B6F). Therefore, not all of Dr. Wiebe's findings are supported with

8

objective evidence and appear to be an over reliance on the claimant's report.

ALJ Decision at AR 28.

***Second***, Plaintiff argues that Doctor Wiebe provided "well-supported analysis . . . based on multiple objective tests and her own clinical observations during a two-hour interview, not merely based on Plaintiff's self-reported symptoms." Motion at 4. But even if Doctor Wiebe based her conclusions on a rigorous examination process, the ALJ could still properly reject Doctor Wiebe's opinion as not supported by her examination findings and inconsistent with other medical evidence that the ALJ found to be persuasive, and the ALJ did so here. *See* ALJ Decision at AR 28.

***Third***, Plaintiff argues that "Dr. Wiebe's findings are consistent with Dr. Catlin's findings one year later, demonstrating a reasonable cognitive decline during the time that elapsed between the two evaluations." Motion at 4. As discussed above, however, the ALJ properly found the opinion of Doctor Catlin not to be persuasive. Further, Doctor Wiebe's opinion is inconsistent with the opinions of Doctors Dalton, Robicheau, Dixit and Thomas, all of which the ALJ found to be at least somewhat persuasive.

**With respect to Doctor Catlin**, Plaintiff offers two reasons why the Court should reject the ALJ's finding of no persuasiveness.

***First***, Plaintiff argues that Doctor Catlin "administered a battery of objective tests and conducted clinical interviews" before rendering her opinion. Motion at 4. As with Doctor Wiebe, however, the propriety of Doctor Catlin's examination does not prevent the ALJ from properly rejecting Doctor Catlin's opinion as not supported by her examination findings and inconsistent with other medical evidence that the ALJ found to be persuasive, and the ALJ did so here. *See* ALJ Decision at 29-30.

***Second***, Plaintiff argues that Doctor Catlin "reviewed relevant medical records spanning five years." Motion at 4. But Doctor Robicheau also reviewed years' worth of medical records, and she rendered a different opinion than did Doctor Catlin. *See* AR 107-11. Review of years' worth of records, therefore, cannot compel finding one medical opinion more persuasive than

9

another.

\* \* \*

Ultimately, Plaintiff quarrels with the ALJ's reliance on evidence unfavorable to him and rejection of his preferred, more-favorable evidence. Accepting either of Plaintiff's preferred or unpreferred evidence finds some support in the record. Under such circumstances, the Court must defer to the ALJ, whose conclusions are supported by substantial evidence. *See Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("Even if the evidence is 'susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" (citation omitted)); *King v. Astrue*, 497 F. App'x 758, 760 (9th Cir. 2012) ("[W]here the evidence as a whole can support either outcome, we may not substitute our judgement for the ALJ's." (citations omitted)).

### B.   Analysis Of Issue Two: The ALJ Properly Discredited Plaintiff's Subjective Statements Regarding His Symptoms

An ALJ must follow a two-step analysis in evaluating a claimant's subjective statements abouts their symptoms:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.

*Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations and quotation marks omitted). Here, Plaintiff argues that the ALJ erred at the second step for four reasons.

***First***, Plaintiff argues that the ALJ did not provide clear and convincing reasons for rejecting his subjective statements. *See* Motion at 7. But the ALJ discussed in detail the medical evidence in the record on which she based her rejection of Plaintiff's subjective statements. *See* Section IV.A, *supra* (ALJ discussed doctors' reports in detail); ALJ Decision at AR 27 ("[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record <u>for the reasons explained in this decision</u>." (emphasis added)).

10

*Second*, Plaintiff argues that the ALJ rejected his subjective statements based in part on his ability to perform daily activities, but that in doing so the ALJ ignored evidence indicating that Plaintiff can perform daily activities only with the help of his fiancée. *See* Motion at 7. However, it does not appear that Plaintiff limited his ability to perform daily activities in this way when describing his "activities of daily living" to Doctors Dixit and Catlin (*see* AR 462 (Dixit), 514 (Catlin)), and the ALJ relied on these descriptions in concluding that Plaintiff could perform daily activities. *See* ALJ Decision at AR 27 (citing B6F and B9F portions of Administrative Record). At best, therefore, the evidence is susceptible to multiple interpretations, in which case the Court must defer to the interpretation of the ALJ. *See Farlow*, 53 F.4th at 488; *King*, 497 F. App'x at 760. Further, the ALJ did not rely solely on Plaintiff's ability to perform daily activities in rejecting his subjective statements; she also considered medical evidence contradicting his statements. *See* ALJ Decision at AR 27.

*Third*, Plaintiff argues that the ALJ improperly relied on evidence that Plaintiff's condition "is stable with treatment" (*id.*), because the evidence shows that he experiences auditory hallucinations even when he complies with his medication regimen. *See* Motion at 8 (citing AR 506-07, 509). But Plaintiff overstates his cited evidence, which indicates that his auditory hallucinations remain "infrequent." *See* AR 506-07, 509. As before, therefore, the evidence is susceptible to multiple interpretations, in which case the Court must defer to the interpretation of the ALJ. *See Farlow*, 53 F.4th at 488; *King*, 497 F. App'x at 760.

*Fourth*, Plaintiff argues that the ALJ improperly relies on evidence that Plaintiff does not always take his medication as prescribed. *See* Motion at 7-8. The Court fails to see how Plaintiff's failure to follow his medication regimen supports the ALJ's conclusion that Plaintiff's "mental symptoms are not as limiting as he alleges" (ALJ Decision at AR 27), and the ALJ does not elaborate on this point. The Court therefore agrees with Plaintiff that the ALJ improperly relied on this evidence in rejecting Plaintiff's subjective statements. Nevertheless, the ALJ's decision to reject Plaintiff's subjective statements is otherwise sufficiently supported by the medical evidence in the record. *See id.*

///

### C. Analysis Of Issue Three: The ALJ Properly Determined Plaintiff's RFC

Plaintiff argues that the ALJ improperly determined his RFC, because she (1) erred in her evaluation of the medical evidence in the record, (2) improperly rejected Plaintiff's subjective statements and (3) improperly rejected the statements of Plaintiff's fiancée. *See* Motion at 9. The Court has already rejected arguments (1) and (2). *See* Sections IV.A-B, *supra*. As for the statements of Plaintiff's fiancée, the ALJ explained that these statements "are consistent with [Plaintiff's] own statements" and concluded that these statements "are not persuasive for the same reasons detailed herein that [Plaintiff's] allegations are not fully persuasive." *See* ALJ Decision at AR 27. Because the ALJ properly rejected Plaintiff's statements, she also properly rejected the consistent statements of Plaintiff's fiancée. *See, e.g.*, *Jennings v. Saul*, 804 F. App'x 458, 463 (9th Cir. 2020) (ALJ properly discounted lay-witness testimony where such testimony "largely expressed the same limitations described in [the claimant's] own testimony, which the ALJ discounted").

### V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Cross-Motion.

**SO ORDERED.**

Dated: January 2, 2024

_____
SUSAN VAN KEULEN
United States Magistrate Judge